UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Tammy Ayres,

    Plaintiff,

    v.                                               Case No. 1:04cv512

The Brewer Company                   Judge Michael R. Barrett

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendants' Motion for Summary Judgment (Doc. 17). Plaintiff has filed a Response in Opposition (Doc. 26) and Defendants have filed a Reply (Doc. 27). This matter is now ripe for review.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

In her Complaint, Plaintiff Tammy Ayres ("Ayres") brought claims of sexual discrimination and harassment under Title VII of the Civil Rights Act of 1964 and Ohio Revised Code §§4112.02 and 4112.99 against Defendant, The Brewer Company ("Brewer"), her former employer (Doc. 1).[1]

Brewer initially hired Ayres as a laborer in its "Utility Division" in July of 2000 (Ayres Depo. at 29-31, Doc. 1 and 3). Ayres worked for Brewer until May 23, 2003 (Doc. 1 and

---

[1] Because "Ohio courts examine Title VII . . . and state employment-discrimination claims under federal case law interpreting Title VII," Bucher v. Sibcy Cline, Inc., 738 N.E.2d 435, 442 (Ohio Ct. App. 2000), Ayres' state law sex discrimination and sexual harassment causes of action stand or fall with the federal one. Therefore, the Court need analyze only Plaintiff's Title VII claim.

3). Brewer's Utility Division lays gas pipe and performs related services for Cinergy (now known as Duke Energy) (Def. Interrogatory Answers, Int. 17). Initially, Ayres performed the job duties of a flagger and was later operating a directional bore machine, called a "ditch witch", which requires two laborers to operate (Doc. 1, Doc. 3 and Fetters Depo. at 34). Throughout Ayres employment with Brewer she was laid off and called back to work on several occasions (Ayres Depo. at 47-49). The Utility Division employed approximately 80 laborers at the time Plaintiff's employment with Brewer ended (Def. Interrogatory Answers, Int. 17). Nearly all of those laborers were male and all of Plaintiff's supervisors and managers were male (Decl. T. Ayres, ¶ 8, Doc. 1 and Doc. 3). Among Plaintiff's immediate supervisors were Kevin Parker and Jay Fetters, who were designated as "crew leaders" and "foreman" (Kevin Parker Depo. at 11, Fetters Depo. at 9-11). Ken Parker, Kevin's father, was the "supervisor" (Kevin Parker Depo. at 11). Ayers was not provided with a copy of Brewer's policy on sexual harassment or even informed if such a policy existed (Decl. T. Ayres, ¶7).

Several times a year Brewer would select certain employees to be trained with "live gas". Once this training was completed the employee would receive a "live gas card" and earn $.50 more per hour (Kevin Parker Depo. at 86). Plaintiff repeatedly asked to receive this training (Ayres Depo. at 142, 206). Defendant continuously refused Plaintiff the opportunity (Doc. 1 and 3) and states that it was because she was overweight (Ken Parker Depo. at 44). However, virtually every male laborer that Plaintiff knew, including those larger than her, was given the opportunity to be certified (Ayres Depo. at 142-143, 206; Decl. T. Ayres, ¶20).

Plaintiff believes that there exists a bias against women at Brewer. Examples of this bias include, but are not limited to, statements made by Kevin Parker which include "women were only to be flagging" (Decl. Vincent, ¶9; Decl. Updike, ¶5), "women were not leaders", "Mr. Dilillo wanted to get rid of all the women laborers" and "Mr. Dilillo disliked women worse than his father did" (Decl. T. Ayres, ¶¶12-14, Decl. Vincent, ¶9).  In addition, women were denied bathroom breaks when men were not and Plaintiff was referred to as "cupcake" and "sweetheart" by Mr. Fetters (Decl. T. Ayres, ¶11; Decl. Updike, ¶¶7, 9; Decl. Vincent, ¶7; Decl. B. Ayres, ¶4).  Plaintiff and at least one other female employee were asked by Mr. Fetters, "Do you spit or swallow?" (Decl. Updike, ¶8).  He also told Plaintiff that if her husband could not keep her happy sexually that he could (Id).  Furthermore, the company work trucks contained pornographic magazines in plain view (Decl. Gash, ¶8; Decl. Updike, ¶6; Decl. R. Ayres, ¶7; Decl. B. Ayres, ¶5).  The day before Plaintiff was laid off Ken Parker became angry with Plaintiff about a shirt she was wearing and he stated, "the problem with you is you're a f[**]king woman"  (Decl. T. Ayres, ¶15; Decl. D. Ayres, ¶7).

Plaintiff's husband, Ronald Ayres, made a complaint to the Safety Director about the sexual harassment the women employees, including Plaintiff, were facing.  In December, 2002 or January, 2003, Ronald and David Ayres also complained to the President of the company.  No action was taken by the Defendant (Decl. R. Ayres, ¶¶8, 9; Decl. D. Ayres, ¶8).

Prior to being laid off, Plaintiff's crew, including Plaintiff, were told that they would be moving to a new job on Edwards Road (Decl. T. Ayres, ¶17).  Instead, Plaintiff was laid off.  Plaintiff was the only member of her crew laid off (Decl. T. Ayres, ¶17; Ken Parker,

Depo. at 62). Ken Parker could not provide an explanation as to why this was the case (Ken Parker, Depo. at 76-77).

## II. ARGUMENTS OF THE PARTIES

Defendant argues that it is entitled to summary judgment on Plaintiff's claim of a hostile work environment because (1) the harassment was not unwelcomed, (2) the harassment was not sufficiently severe or pervasive enough to create a hostile work environment, (3) the harassment was not based on sex, and (4) Defendant did not know of the harassment. The Defendant also argues that it is entitled to summary judgment as to Plaintiff's claim of gender discrimination because, Defendant argues, she was not allowed to receive live gas training due to her size, not her gender. Defendant further argues that gender had no role in the decision not to call her back to work. Finally, Defendant argues that it should prevail on its motion for summary judgment as to Plaintiff's claim for retaliation. This argument is based on Defendant's assertion that Plaintiff did not engage in protected activity and, even if she did, there is no causal connection between this activity and her subsequent failure to be recalled back to work.

Plaintiff argues that there are questions of fact at issue which make summary judgment inappropriate. Specifically, Plaintiff responds that she was subjected to sexual harassment which included, unwanted sexual advances, excessive verbal abuse, exposure to pornographic magazines, comments made about her body, being called insulting, offensive and humiliating names, being denied bathroom breaks and drinks and being give demeaning jobs not assigned to male employees - all of which created a hostile work environment. In addition, Plaintiff argues that she was denied the opportunity to receive live gas training and that she was laid off because she is a women. Finally, Plaintiff argues

4

that she was retaliated against by not being called back to work because her relatives complained about the sexual harassment she was enduring on the job.

### III. ANALYSIS

####    A. Summary Judgment Standard.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

####    B. Sex Discrimination under Title VII.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin" (U.S.C. § 2000e-2(a)(1)) or "to limit, segregate or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect

5

his status as an employee, because of such individual's race, color, religion, sex, or national origin" 42 U.S.C. § 2000e-2(a)(2). Ayres claims three different types of discrimination based upon sex: hostile work environment, disparate treatment, and retaliation.

    1.    *Hostile work environment*.

Ayres alleges that she was subjected to a hostile work environment. Ayres may establish a violation of Title VII by proving that sex discrimination created a hostile or abusive work environment without having to prove a tangible employment action. *Bowman v. Shawnee State University*, 220 F.3d 456, 462-63 (2000) (citing *Meritor Sav. Bank v. Vinson*, 477 U.S. 57 (1986)). To establish a hostile work environment claim, Ayres must show (1) that she is a member of a protected class; (2) that she was subject to unwelcomed sexual harassment; (3) that the harassment was based on sex; (4) that the harassment created a hostile work environment; and (5) that the Defendant failed to take reasonable care to prevent and correct any sexually harassing behavior. *See Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560-61 (6th Cir.1999). Harassment affects a "term, condition or privilege of employment" if it is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and creates an abusive working environment. *Moore v. Kuka Welding Systems,* 171 F.3d 1073, 1079 (1999), *citing*, *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). The plaintiff's evidence must be sufficient to show that the alleged conduct constituted an unreasonably abusive or offensive work-related environment or adversely affected the employee's ability to do his or her job. *Moore*, 171

F.3d at 1079, *citing*, *Erebia v. Chrysler Plastic Prods. Corp*., 772 F.2d 1250, 1256 (6th Cir.1985).

In determining whether there was a hostile or abusive work environment, courts are to look to the totality of the circumstances. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998), *citing*, *Harris*, 510 U.S. at 23. This Court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "[T]he issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether– taken together – the reported incidents make out such a case." *Williams*, 187 F.3d at 562. Unless extremely serious, isolated incidents of harassment will not amount to discriminatory changes in the terms or conditions of employment actionable under Title VII. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000).

As to the first prong of the test, it is undisputed that Ayres is a member of a protected class. Thus, the Court must then look to whether or not Ayres was subjected to unwelcomed sexual harassment. Defendant argues that Plaintiff never made any complaints of sexual harassment nor did she file a grievance with the union regarding any sexual harassment. Defendant then makes the unfounded leap that because Plaintiff, herself, did not complain that such actions were welcomed by her. However, there is sufficient evidence in the record to show that Plaintiff's husband and brother-in-law, both employees of Defendant, complained of the sexual harassment. In addition, Plaintiff states

that such harassment was not welcomed. Thus, there is a genuine issue of fact as to whether the harassment was welcomed.

The next issue is whether the harassment was based on sex. Plaintiff presented evidence that women were denied bathroom breaks when men were not and Plaintiff was referred to as "cupcake" and "sweetheart" by Mr. Fetters. In addition, Plaintiff and at least one other female employee were asked by Mr. Fetters, "Do you spit or swallow?" He also told Plaintiff that if her husband could not keep her happy sexually that he could. In addition, the company work trucks contained pornographic magazines.

Furthermore, the Plaintiff has presented evidence, by way of affidavit, that includes statements made by Kevin Parker which include "women were only to be flagging", "women were not leaders", "Mr. Dilillo wanted to get rid of all the women laborers" and "Mr. Dilillo disliked women worse than his father did." In addition, Ken Parker allegedly stated, "the problem with you is you're a f[**]king woman". This evidence raises a question of fact for which a reasonable jury could determine was based on sex.

Did this harassment create a hostile work environment? The Defendant argues that it did not, that the events were infrequent, that Plaintiff did not complain and that the alleged incidents were not severe. However, Plaintiff, in her affidavit, specifically states that she "found the work environment at The Brewer Company to be offensive, demeaning, and hostile to females." Tina Updike also stated that the work atmosphere "was very hostile to female laborers." Thus, the Court finds a genuine issue of fact exists.

The final inquiry is whether or not the Defendant failed to take reasonable care to prevent and correct any sexually harassing behavior. There is testimony, via affidavit, that Ronald Ayres informed the Safety Director of the sexual harassment that was taking place

on the job site and also that Ronald Ayres and David Ayres told the President that sexual harassment was taking place. Both men state that nothing was done in response to their complaints. In addition, Plaintiff states that she was never given a company policy on sexual harassment. Again, the Court finds a question of fact.

For the foregoing reasons, the Court finds there are genuine issues of material fact as to Plaintiff's hostile work environment claims. Summary judgment is inappropriate.

      2.    *Disparate treatment*.

A Title VII gender discrimination claim under a disparate treatment theory is to be analyzed using the burden-shifting approach first announced in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). A plaintiff has the initial burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *Id.* at 802. To establish a *prima facie* case of discrimination under Title VII, a plaintiff generally must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position in question; and (4) she was treated differently from similarly situated individuals outside of her protected class. *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004), *citing*, *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000).[2] To satisfy the fourth prong, a plaintiff must show that the defendant treated

---

[2]A claim of employment discrimination is to be analyzed using the burden-shifting approach in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973) when there is no direct evidence of discrimination. Examples of direct evidence are a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000), *citing*, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) and *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 379-80 (6th Cir.1993). Ayres has not alleged any direct evidence of discrimination, and therefore the burden-shifting analysis is applicable.

differently employees who were similarly situated but were not members of the protected class. *Sutherland v. Mich. Dept. of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003).

If the plaintiff succeeds in establishing a *prima facie* case, an inference of discrimination arises, and the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for its actions. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981). If the defendant articulates a nondiscriminatory reason for its actions, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons put forth by the defendant were not its true reasons but were a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802. The plaintiff may prove pretext by showing either that: (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the adverse action, or (3) the proffered reason was insufficient to motivate the adverse action. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994). The ultimate burden of persuading the trier of fact that the employer intentionally discriminated against her remains at all times with the plaintiff. *Burdine*, 450 U.S. at 253.

Plaintiff claims that she was subject to disparate treatment relating to two separate issues: (1) that Plaintiff was continually denied the opportunity to receive live gas training despite repeated requests and (2) that Plaintiff was the only person in her crew to be laid off.

As to both claims of disparate treatment, it is undisputed that Plaintiff is a member of a protected class. Further it is undisputed that she suffered an adverse employment action - she was denied training and she was laid off. There also does not seem to be any dispute that she was qualified as she had held her position for several years. Thus, the

dispute centers around whether or not she was treated differently from similarly situated individuals outside of her protected class.

     First, as stated above, the Plaintiff has presented evidence, by way of affidavit, that includes statements made by Kevin Parker which include "women were only to be flagging", "women were not leaders", "Mr. Dilillo wanted to get rid of all the women laborers" and "Mr. Dilillo disliked women worse than his father did."  In addition, Ken Parker stated, "the problem with you is you're a f[**]king woman".  All these statements, taken together, could a lead a reasonable jury to find that Plaintiff was treated differently than similarly situated men.

     Furthermore, as to the live gas training, at various times Brewer would offer laborers in the Utility Division the opportunity to be trained and certified to work with live gas.  This training enabled the laborer to make fifty cents per hour more.  Plaintiff repeatedly asked for permission to receive this training.  Defendant continually refused her this training. Defendant argues that because it allowed Jama Vincent, a female, to receive the live gas training that Plaintiff's claim must fail on its face.  However, the Court finds that the exception of allowing one female out of approximately 80 employees to take the training does not show nondiscrimination.  Additionally, even if Plaintiff can prove a *prima facie* case, Defendant argues that Plaintiff was denied the opportunity not because she was female but because she was overweight.  Plaintiff counters that men bigger in size than Plaintiff were allowed to receive the live gas training.  Thus, there exists a material issue of fact and this inquiry may stop here. Summary Judgment is inappropriate as to Plaintiff's claim of disparate treatment regarding live gas training.

As to Plaintiff's claim that she was laid off due to her gender, the Court also finds that there is a genuine issue of material fact that exists. Defendant argues that several males were also laid off. However, Plaintiff states that she was the only person in her crew that was laid off despite assertions that the entire crew would be laid off. In addition, in his deposition, Mr. Ken Parker could not articulate a reason as to why Plaintiff was the only one laid off from her crew. Thus, there is a genuine issue of fact as to whether or not Plaintiff was treated differently from similarly situated individuals outside of her protected class.

In addition, Defendant argues that even if Plaintiff can prove a *prima facie* case of disparate treatment, it can show a legitimate nondiscriminatory reason for its actions. Defendant argues that Plaintiff was laid off because she had gastric bypass surgery, did not report this surgery and failed to perform her job at the level required of her. However, Ken Parker, in his deposition, was unable to articulate a reason for Plaintiff being laid off. For the foregoing reasons, summary judgment is inappropriate.

    3.    *Retaliation*

The Plaintiff claims that she has not been called back to work in retaliation for her relatives reporting her sexual harassment to the President of the Company and its Safety Director. To prove a *prima facie* claim of retaliation the Plaintiff must show: (1) she engaged in protected activity, (2) the Defendant was aware of the protected activity, (3) the Defendant subsequently took an employment action adverse to the Plaintiff, and (4) a casual connection exists between the protected activity and the adverse employment actions. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). The *McDonnell Douglas* burden-shifting paradigm applicable in disparate treatment discrimination cases,

is also applicable to retaliation claims as well. *Burns v. Jacor Broadcasting Corp.,* 128 F. Supp.2d 497, 514 (6th Cir. 2001).

Defendant argues that Plaintiff can not make a *prima facia* case for retaliation as she did not engage in a protected activity. Plaintiff alleges that her husband and her brother-in-law made the complaints on her behalf. Without citing to any legal authority the Defendant makes the bold statement that "the law requires that Plaintiff engage in protected activity, not someone on Plaintiff's behalf" (Defendant's Reply, p8). This Court and the Sixth Circuit disagree.

The Sixth Circuit has held that "a plaintiff's allegation of reprisal for a relative's antidiscrimination activities states a claim upon which relief can be granted under Title VII." *EEOC v. Ohio Edison Co.*, 7 F.3d 541, 544 (6th Cir. 1993). In holding this the Sixth Circuit rejected the theory that third parties, who have not actually engaged in protected activities themselves, can never sue under 42 U.S.C. § 2000e-3(a), stating:

> Even though the statute does not specifically provide for such a claim by a relative who has been discriminated against, the majority of courts, including the Supreme Court, have been willing to construe Title VII and companion provisions under the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), and the Age Discrimination Employment Act (ADEA), 29 U.S.C. § 623(d), broadly in order not to frustrate the purpose of these Acts, which is to prevent fear of economic retaliation from inducing employees 'quietly to accept [unlawful] conditions.'

*Id.* citing *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292, 4 L. Ed. 2d 323, 80 S. Ct. 332 (1960). Thus, even though Plaintiff in this case may not have personally engaged in protected activity, the activity of her relatives on her behalf is sufficient to meet the standard.

The Defendant also argues that it was not aware of the protected activity. However, there is evidence to the contrary in the record, thus a question of fact exists. Additionally, it is undisputed that Plaintiff was laid off by the Defendant, as such an adverse employment action occurred. The Defendant finally argues that no casual connection exists between the protected activity and the adverse employment action because Plaintiff was laid off five or six months after Plaintiff's relatives complained about her sexual harassment. However, this court finds that the issue of whether or not five or six months is too long a time period to establish a causal connection is one for the jury to determine.

Based on the foregoing, Defendants' Motion for Summary Judgment (Doc. 17) is hereby **DENIED**.

**IT IS SO ORDERED.**

                                                  /s/ Michael R. Barrett
                                                Michael R. Barrett, Judge
                                                United States District Court